THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA JACKSON, | : | CASE NO. 1:15-CV-00587-MRB |
| | : | |
| Plaintiffs, | : | (Judge Michael R. Barrett) |
| | : | |
| v. | : | |
| | : | |
| PROFESSIONAL RADIOLOGY, INC., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT, CONTROLLED CREDIT CORPORATION'S, MOTION FOR JUDGMENT ON THE PLEADINGS

Now comes plaintiff, Barbara Jackson, by and through counsel, and hereby submits her Memorandum in Opposition to the Motion to Dismiss filed on behalf of Defendant, Controlled Credit Corporation.

Respectfully submitted,

/ s / Gary F. Franke
Gary F. Franke                    (0029793)
Michael D. O'Neill               (0075195)
GARY F. FRANKE CO., L.P.A.
120 East 4th Street, Suite 1040
Cincinnati, Ohio 45202
Tel: (513) 564-9222
Fax: (513) 564-9990

/s/ C. David Ewing
C. David Ewing                   (#002898)
Ewing & Willis, PLLC
6009 Brownsboro Park Blvd., Ste. B
Louisville, KY 40207
Tel:  (502) 585-5800
Fax:  (502) 585-5858

*Attorneys for Plaintiffs*

## MEMORANDUM

**I.    INTRODUCTION**

Defendant, Controlled Credit Corporation (hereinafter "CCC"), has filed a motion that is identified as a Motion for Judgment on the Pleadings and also a Motion to Dismiss. Initially, a Motion for Judgment on the Pleadings, filed pursuant to Rule 12(c) may be filed "after the pleadings are closed." Fed. R. 12(c).  In this case, the pleadings are not closed and the filing of a 12(c) Motion is improper at this juncture.  Defendant also states within the body of the pleading that it is a 12(b)(6) Motion to Dismiss for failing to state a claim upon which relief can be granted.  The filing of a Rule 12(b)(6) Motion to Dismiss is also improper at this juncture because defendants have previously filed an Answer to the Complaint.  Rule 12(b) states a 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed."

Regardless, plaintiff, Barbara Jackson, will reply to defendant's motion and not occupy the Court's time with procedural minutiae.  Plaintiff's case is simple, straight forward and entitles plaintiff to relief.  Defendant is a sophisticated debt collector that sought to collect medical debt that it was legally barred from pursuing.  Ohio R.C. 1751.60 does not allow Ohio patients, who have health insurance, to be billed directly for medical treatment when the health care provider has contracted with the patient's health insurer to accept the health insurance.  Defendant pursued the plaintiff directly for the debt in violation of Ohio R.C. 1751.60.

**II.    OHIO LAW**

Defendant begins its argument for dismissal by stating "the allegations set forth in Plaintiff's Complaint reveal a single, overarching issue.  Specifically, it is apparent that

Plaintiff believes that United Healthcare should have been billed for the radiology services she received from PRI instead of her." (Doc. 9, p. 2).  Likewise, defendant states, "Plaintiff also believes that CCC was 'required by contract and Ohio R.C. §1751.60 to submit all claims for medical payment to [United Healthcare]'.  This claim is without merit." (Doc. 9, p. 4).   Defendant is partially correct.  Plaintiff's assertion is that the law of Ohio clearly prohibits collection from the Plaintiff by Defendant Professional Radiology, and any entity it employs as its agent, here CCC.  Plaintiff makes no assertion that Professional Radiology and CCC were prohibited from attempting collection that would not result in taking property directly from her such as from other insurers.

Defendant CCC provides this Court with no law nor explanation why the collection method it utilized is not in direct contravention of Ohio law.  Plaintiff will set forth why such collection is prohibited before addressing each of the causes of action sought to be dismissed.

Healthcare providers, like Professional Radiology, must decide whether they choose to be preferred providers with health insurers or not.  If they contract with a health insurer, there is a trade off; more patients for lower reimbursement rates.  The health insureds pay the health insurer a premium to gain access to preferred providers, such as Professional Radiology in this case.  The State of Ohio has promulgated specific statutes to protect and guarantee the benefits of health provider-health insurance contracts for Ohio healthcare consumers.  Every contract between a provider and a health insurer must, by law, contain the verbiage set forth in Ohio R.C. §1751.13(C)(2).

R.C. §1751.13(C)(2). The specific hold harmless provision specifying protection of enrollees is set forth as follows:

> *"[Provider/Health Care Facility] agrees that in no event, including but not limited to nonpayment by the health insuring corporation, insolvency of the health insuring corporation, or breach of this agreement, shall [Provider/Health Care Facility] bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, person to whom health care services have been provided, or person acting on behalf of the covered enrollee, for health care services provided pursuant to this agreement. This does not prohibit [Provider/Health Care Facility] from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against the health insuring corporation or its successor."*

This statute prohibits seeking remuneration by any method from patients who are the intended beneficiaries of contracts between providers and health insurance corporations.  Since the statutory "hold harmless" language is mandatory, the Court may take judicial notice that the contract between United Healthcare and Professional Radiology includes the statutory recital.  Simply stated, R.C. §1751.13(C)(2) leaves no doubt that insured patients, who are the subject matter of the contract, are absolutely immune to collection by a provider subsequent to the consummation of the contract.  The statute is so all encompassing that this immunity survives nonpayment by the health insurer.  It bans billing the patient even when the health insurer meets an insolvent demise.   And, it applies to all of the health insurer's insureds.  It leaves no argument for discrimination on the basis of insureds who seek treatment for auto injuries; who have personal wealth, or who anticipate receiving personal wealth.  All are equally protected

- 4 -

from any and all recourse by healthcare providers for treatment rendered, except for co-insurance, deductibles or co-payments.

R.C. §1751.60(A) and (C) reiterate the mandatory contract language in R.C. §1751.13(C)(2) and state that providers shall not, under any circumstances, seek compensation for covered services from enrollees or subscribers. It matters not who the insured patient is, what brought her to the hospital, or what assets she has or may have in the future. If she is an insured, the contracting provider is strictly prohibited under Ohio law from seeking compensation from her. In the case before this Court, the Plaintiff was insured by United Healthcare. Professional Radiology was a contracting preferred health provider and CCC acted as Professional Radiology's agent for collection of medical bills. CCC, on behalf of Professional Radiology, directly billed the Plaintiff in clear derogation of Professional Radiology's contract with United Healthcare and R.C. §1751.60(A) and (C).

The Ohio Supreme Court has spoken in regard to the scope of the statutory ban on direct billing of health insureds. While confirming the prohibition on billing health insured patients directly, the Court restricted the ban to its four corners by holding that seeking remuneration from third parties does not violate the Ohio statute. *King v. ProMedica Health Sys. Inc.,* 129 Ohio St. 3d 596, (2011). The Court's holding dictates that a healthcare provider can bill the health insurer and/or seek reimbursement from a third party or parties. What the healthcare provider cannot do is bill the health insured.

Defendant CCC is correct that there is a 'single overarching issue'; *viz*, Plaintiff was billed and paid for a debt she was not obligated to pay under Ohio law.

### III. PROCEDURAL POSTURE

The within cause commenced with the filing of plaintiff, Barbara Jackson's (hereinafter "Jackson"), Class Action Complaint on September 11, 2015, against defendants, Professional Radiology Inc. (hereinafter "Professional Radiology"), M.D. Business Solutions, Inc. (hereinafter "M.D. Business Solution") and Controlled Credit Corporation (hereinafter "CCC"). Defendants, were granted extensions to file responsive pleadings. Defendants, Professional Radiology and M.D. Business Solutions, filed a Motion to Dismiss on November 10, 2015. Defendant, CCC, filed an Answer on November 9, 2015. Defendant, CCC, filed a Motion for Judgment on the Pleadings and/or 12(b)(6) Motion to Dismiss on November 12, 2015. Defendant, CCC's, Motion is without merit, untimely and should be denied.

### IV. STATEMENT OF FACTS

On or about April 7, 2014, plaintiff, Jackson, sustained serious injuries in an auto accident. *See Complaint* at para. 9. As a result of the incident, plaintiff, Jackson, received medical treatment and services from defendant, Professional Radiology. *Id.* at para. 10. During admission to the hospital, plaintiff informed admitting staff that she had health insurance coverage. *Id.* at para. 11.

Defendant, Professional Radiology, utilizes defendant, M.D. Business Solutions, for billing and debt collection services. *Id.* at para. 14. After the plaintiff received her medical treatment, defendant, M.D. Business Solutions, sent written correspondence to plaintiff, stating, among other things: that M.D. Business Solutions is responsible for collecting Professional Radiology's bills; the amount owed by plaintiff; a request that plaintiff's attorneys sign a letter of protection against any settlement or judgment that

would "prevent your client's account from being sent to collections"; and, that "the purpose of this communication is to collect a debt." *Id.* at para. 14.  M.D. Business Solutions sent additional dunning letters on July 3, 2014 and January 15, 2015.  *Id.* at para. 16.

Defendant, Professional Radiology, sent dunning letters on December 11, 2014 and March 26, 2015 stating, among other things: that plaintiff owed $1,066.00; that the correspondence was a "FINAL NOTICE;" stating that "if we do not hear from you, more serious collection activity will be initiated;" and, that "the purpose of this communication is to collect a debt." *Id.* at para. 17, 18.  Defendant, Professional Radiology, then placed plaintiff Jackson's bill/invoice with defendant, Controlled Credit, for collection.  *Id.* at para. 19.  On May 5, 2015, Controlled Credit sent plaintiff a dunning letter.  *Id.* at para. 20.

On or about May 26, 2015, plaintiff Jackson, in reaction to the above threats, agreed to pay Controlled Credit $852.00 in full and final settlement of her April 7, 2014 medical treatment.  *Id.* at para. 21.  On June 11, 2015, plaintiff was again directly billed by Professional Radiology and/or M.D. Business Solutions, and was told she still owed $3.49, which plaintiff subsequently paid.  *Id.* at para. 22.

Defendants chose not to submit plaintiffs' medical expenses to the plaintiff's health insurer and instead billed her directly.  *Id.* at para. 13.  Ohio R.C. 1751.60 (A) states as follows:

> *(A) Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.*

Defendant, CCC, pursued Jackson directly for medical expenses rather than Jackson's health insurer in an effort to increase profits and force Jackson to pay more for medical services than would be paid by her health insurer. *Id.* at para. 23. Defendant, CCC, is collecting and attempting to collect monies <u>directly</u> from the plaintiff in direct violation of Ohio R.C. 1751.60 *et seq. Id.* at para. 24.

## V.   ARGUMENT

### A.  STANDARD FOR MOTION TO DISMISS

Courts do not lightly reject fact-based claims at the pleading stage. They may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief. *Buchanan v. Northland,* 776 F.3d 393 (6th Cir. 2015). As outlined by this Court in *Bracken v. Dasco Home Medical Equipment*, Inc., 954 F.Supp.2d 686 (S.D. Ohio 2013), under Rule 12(b)(6), a Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

"[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"*Tackett v. M& G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting *Twombly*, 550 U.S. at 556). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## B. CONTRACT CLAIMS

### i. BREACH OF CONTRACT

Defendant requests that the Court dismiss plaintiff's breach of contract claims. Plaintiff, Jackson, sustained a fractured sternum in an automobile accident immediately prior to receiving medical services from defendant, Professional Radiology. *See Complaint* at para. 9. As one would expect, Jackson and Professional Radiology did not enter into a written contract prior to treatment being rendered. "[A]n action on an account is founded upon contract, express or implied, and any competent evidence is necessarily admissible to prove the existence of the contract, its consideration, the furnishing of the services or goods, the consideration therefore, any payments made, and the balance due." *Summa Health Sys. v. Viningre*, 140 Ohio App.3d 780 (2000). Implied contracts may be inferred from the surrounding circumstances, including the parties' conduct and declarations that a contract exists as a matter of tacit understanding. *Stepp v. Freeman*, 119 Ohio App.3d 68, 74 (1997).

Defendant, CCC, obviously acknowledged the existence of a contract because they sent a May 5, 2015 dunning letter to the plaintiff stating the account for medical services provided on April 7, 2014 was in the amount of $1,066.00 and demanding payment for said services.  *See Complaint* at para. 20.  Plaintiff's Complaint shows the existence of a contractual relationship, performance by the plaintiff, breach by the defendant and itemizes plaintiff's damages.  *See Complaint* at para. 14, 17, 20, 21, 34-39.  At all times relevant to the within action, defendant, CCC, was an agent of defendant, Professional Radiology, and acted on their behalf and to their benefit.  Plaintiff's breach of contract claims should not be dismissed.

## ii.  THIRD PARTY BENEFICIARY CLAIM

Defendant requests that the Court dismiss plaintiff's third party beneficiary claims for the same reasons offered in their breach of contract argument.  Initially, plaintiff, Jackson, is not required under the Federal Rules of Civil Procedure to attach a copy of her health insurance contract.  Plaintiff is a named insured of United Healthcare, a health insurance corporation and is entitled to receive benefits for health care services from United Healthcare.  *See Complaint* at para. 4.  Publicly available documents produced by Professional Radiology indicate that plaintiff's health insurer, United Healthcare, is one of Professional Radiology's "participating plans."  *See Exhibit 1.*  Additionally, the contract language rendering plaintiff an intended beneficiary is judicially noticeable since its inclusion is mandated by R.C.1751.13 (C) (2).

Plaintiff is an intended beneficiary of the contract between Professional Radiology and United Healthcare.  If the promise intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights

- 10 -

under the contract. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, (Ohio 2011). R.C. 1751.60(A) mandates that health providers and healthcare facilities that contract with health insuring corporations to provide healthcare to the health insurer's enrollees or subscribers shall not, under any circumstances, seek compensation for covered services from the enrollees or subscribers, except for approved co-payments and all deductibles. Further, Jackson is also rendered a third party beneficiary by Ohio R.C. 1751.13(c)(2) which requires that all contracts between providers and health insuring corporations must contain the following "hold harmless" provision:

> *1751.13 (C)(2) The specific hold harmless provision specifying protection of enrollees set forth as follows:*
>
> *"[Provider/Health Care Facility] agrees that in no event, including but not limited to nonpayment by the health insuring corporation, insolvency of the health insuring corporation, or breach of this agreement, shall [Provider/Health Care Facility] bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, person to whom health care services have been provided, or person acting on behalf of the covered enrollee, for health care services provided pursuant to this agreement. This does not prohibit [Provider/Health Care Facility] from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against the health insuring corporation or its successor."*

Professional Radiology was free to decline entering into the contracts governed by R.C. 1751.60 (A) but it voluntarily did so enter into such contracts, as it freely admits. *See Exhibit* 1. Plaintiff was a third party beneficiary of said contract. *See Complaint* at para. 41. Per R.C. 1751.13 (C)(2), "in no event" shall Professional Radiology, or its agents or assignees, seek reimbursement from Plaintiff, Jackson. Plaintiff, Jackson, is an intended

third-party beneficiary under the contract and Ohio law. Plaintiff's third-party beneficiary claims should not be dismissed.

### C. OHIO CONSUMER SALES PRACTICE ACT CLAIMS

Defendant requests the Court's dismissal of plaintiff, Jackson's, Ohio Consumer Sales Practice Act (hereinafter "OCSPA") claims. This request is completely without merit and will be briefly addressed with controlling case law. The act of collecting a debt is considered a consumer transaction for the purposes of the OCSPA. *Midland Funding LLC v. Brent*, 644 F.Supp.2d 961 (N.D.Ohio 2009). The OCSPA prohibits "an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." 1345.02(A). *Id.* Defendant sought to collect monies from Jackson that they had no legal right to collect. *See Complaint* at para. 49. Further, the Ohio Supreme Court, in a case regarding the interpretation and scope of Ohio R.C. 1751.60, found defendant's exact conduct in this case to be in violation of Ohio R.C. 1751.60. In *King*, the Ohio Supreme Court stated: "The statute is applicable only when there is a contract between a provider and a health-insuring corporation, and the provider seeks compensation for services rendered. The legislature expressed its intent that the provider must seek compensation solely from the health-insuring corporation and not from the insured." (Emphasis added). *King v. ProMedica Health Sys., Inc.*, 129 Ohio St.3d 596 (2011).

Further, Ohio Courts have ruled that a debt collector and creditor/supplier are linked and cannot simply avoid liability under the OSCPA through assignment. "Thus, we believe that R.C. Chapter 1345 prohibits the supplier from employing unfair practices

from the initial contact with the consumer until the debt is paid. Since the Act provides consumer protection through all phases of the transaction, the seller cannot relieve itself of its duty to act fairly by assigning its claim to an agent or assignee and having that assignee conduct practices prohibited by the Act. Such a narrow construction of R.C. 1345.01(C) would defeat the purpose of the Act." *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49 (Ohio App. 9 Dist. 1984).  Defendant's motion to dismiss plaintiff's OCSPA claims lacks merit.

### D.  FDCPA CLAIMS

Defendant also requests that the Court dismiss plaintiff's Fair Debt Collection Practices Act (hereinafter "FDCPA") claims.  Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status. *Jerman v. Carlisle*, 130 S.Ct. 1605, (2010).  The FDCPA is "extraordinarily broad." *Currier v. First Resolution Investment Corp.*, 762 F.3d 529 (6th Cir. 2014).  Plaintiff's FDCPA claim is rooted in the fact that CCC collected a debt that it was not legally entitled to collect from the plaintiff.  Defendant, CCC, claims that plaintiff failed to allege that CCC falsely represented the legal status of the debt.  Plaintiff's entire case revolves around disputing the legal status of the debt.  *See Complaint,* at Introduction and para. 15, 24.

Plaintiff alleges that defendant, CCC's, collection practices were unfair and unconscionable in that they attempted to collect a debt that they were not authorized to collect by law.  The FDCPA does not define an "unfair or unconscionable" act.  The 6Th Circuit has found that unfair and unconscionable acts include, among other things, "the collection of any amount not expressly authorized by the debt agreement or by law." *Currier v. First Resolution Investment Corp.*, 762 F.3d 529 (6th Cir. 2014).

Defendant then argues that it is entitled to rely on the account information it received from defendant, Professional Radiology. This argument lacks merit in that CCC does not dispute that it was attempting to collect compensation for medical services from an individual, in direct violation of Ohio R.C. 1751.60 and R.C. 1751.13. Defendant, CCC, was collecting a debt not authorized by Ohio law. The defendant, CCC, relies on *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992) to support their contention that the FDCPA does not require an independent investigation of the debt referred for collection. The Court in *Smith* was referring to a $10.00 clerical error made by the debt collector's client. "The documents clearly reflect the fact that it was a clerical error on the part of defendant's client to refer plaintiff's account for collection, both as to the amount alleged as well as the fact that the debt had previously been paid." *Id.* Plaintiff, Jackson, is not alleging a clerical error. Jackson is alleging that CCC was collecting a debt not authorized by law, specifically Ohio R.C. 1751.60 and R.C. 1751.13.

Under the FDCPA, a plaintiff does not need to prove knowledge or intent to establish liability, nor must he show actual damages, which "places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 449 (6th Cir. 2014). In other words, if a debt collector seeks fees to which it is not entitled, it has committed a prima facie violation of the Act, even if there was no clear prior judicial statement that it was not entitled to collect the fees. See *id.* at 450--51. Finally, the 6th Circuit has held that "mistakes of state law can give rise to liability." *Wise v. Zwicker & Assocs., P.C.,* 780 F.3d

710 (6th Cir. 2015). Defendant's request for dismissal of the FDCPA claim is without merit.

### E. FRAUD CLAIMS

Defendant, CCC's, request to have plaintiff's fraud claims dismissed is completely without merit. It will be briefly addressed. In general, " [a] complaint is sufficient under Rule 9(b) if it alleges 'the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud,' and enables defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.' " *U.S. ex rel. Poteet v. Medtronic*, *Inc.*, 552 F.3d 503 (6th Cir. 2009).

Plaintiff's fraud claim has been pled simply, directly and with particularity. Defendant, CCC, made false representations of fact in that they sought to collect money from the plaintiff that was not authorized by law. *See Complaint* at Introduction and at para. 20, 21. These actions are in direct violation of R.C. 1751.60. *See Complaint* at para. 24. Plaintiff specifically identified the time, place and content of defendant's misrepresentation by quoting defendant's own dunning letters. *See Complaint* at para. 20. Plaintiff was injured in that, among other things, defendant, CCC, collected monies it was not legally entitled to collect from the plaintiff. *See Complaint* at para. 21. Plaintiff's fraud allegations are pled with sufficient particularity and should not be dismissed.

### F. CONVERSION CLAIM

Defendant's request to have plaintiff's conversion claim dismissed is without merit. The Ohio Supreme Court has held "that conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his

- 15 -

possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 551 N.E.2d 172 (Ohio 1990). Defendant's collection methodology constitutes seeking "compensation for covered services…from the enrollees or subscribers…," it is prohibited debt collection pursuant to R.C. 1751.60 (A), and it is equally prohibited in regard to all commonly affected putative class members in Ohio. This is clearly contrary to Ohio R.C. 1751.60 which strictly prohibits direct billing; "and not, under any circumstances," from the patient directly. Defendant sought and received compensation directly from the Jackson which they were not legally entitled to. *See Complaint* at para. 20, 21. Defendant, CCC, without citing any case law or statute, argues that the fact that Jackson was represented by counsel in some way affects or negates her conversion claim. This assertion is irrelevant. Defendant has wrongfully collected and retained plaintiff's property, in violation of her rights under Ohio law. Therefore, plaintiff's claim for conversion should not be dismissed.

### G. UNJUST ENRICHMENT CLAIM

Defendant's request for the Court to dismiss plaintiff's unjust enrichment claim is without merit. "A claim for unjust enrichment arises out of a contract implied in law, or quasi-contract." *Hummel v. Hummel*, 133 Ohio St. 520, 525-528 (1938). Under this type of contract, civil liability "arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain" without compensating the individual who conferred the benefits. *Id.* at 525. To support a claim of unjust enrichment, a plaintiff must demonstrate that (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or

inequitable to permit the defendant to retain the benefit without compensating the plaintiff. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

Plaintiff conferred a benefit to defendant by the payment of monies. *See Complaint* at para. 21. Defendant demanded and received the payment. *See Complaint* para. 20, 21. It is inequitable to permit the defendant to retain the benefit without compensating plaintiff. Defendant, under Ohio R.C. 1751.60 is not allowed, "under any circumstances," to seek or receive compensation directly from the plaintiff, Jackson. Defendant's collection scheme is prohibited by Ohio law and it would be unjust to permit the defendant to retain their ill-gotten benefits without compensating the plaintiff.

## VI. CONCLUSION

For the foregoing reasons, dismissal is not appropriate in this case. Construing the Complaint in the light most favorable to plaintiff, claims for which relief can be granted have been made. Plaintiff has sufficiently pled allegations that are plausible, not speculative, nor legally conclusory. Therefore, Defendant, Controlled Credit Corporation's, Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

*/ s / Gary F. Franke*
Gary F. Franke          (0029793)
Michael D. O'Neill          (0075195)
GARY F. FRANKE CO., L.P.A.
120 East Fourth Street, Suite 1040
Cincinnati, OH  45202
Tel:  (513) 564-9222
Fax  (513) 564-9990

*/s/ C. David Ewing*
C. David Ewing          (#002898)
Ewing & Willis, PLLC
6009 Brownsboro Park Blvd., Ste. B
Louisville, KY 40207

- 17 -

Tel:   (502) 585-5800
Fax:  (502) 585-5858

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed

this 4th day of December, 2015, through the Court's CM/ECF filing system, which shall

serve a copy of the document upon all registered counsel of record.

*/s/ Gary F. Franke*
Gary F. Franke                    (#0029793)
Attorney at Law