THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA JACKSON, | : | CASE NO. 1:15-CV-00587-MRB |
| | : | |
| Plaintiffs, | : | (Judge Michael R. Barrett) |
| | : | |
| v. | : | |
| | : | |
| PROFESSIONAL RADIOLOGY, INC., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS', PROFESSIONAL RADIOLOGY, INC. AND
M.D. BUSINESS SOLUTIONS INC.'S, MOTION TO DISMISS**

---

Now comes plaintiff, Barbara Jackson, by and through counsel, and hereby submits her Memorandum in Opposition to the Motion to Dismiss filed on behalf of Defendants, Professional Radiology, Inc. and M.D. Business Solutions, Inc.

Respectfully submitted,

/s/ C. David Ewing
C. David Ewing          (#002898)
Ewing & Willis, PLLC
6009 Brownsboro Park Blvd., Ste. B
Louisville, KY 40207
Tel:  (502) 585-5800
Fax:  (502) 585-5858

/ s / Gary F. Franke
Gary F. Franke          (0029793)
Michael D. O'Neill          (0075195)
GARY F. FRANKE CO., L.P.A.
120 East 4th Street, Suite 1040
Cincinnati, Ohio 45202
Tel:    (513) 564-9222
Fax: (513) 564-9990
*Attorneys for Plaintiffs*

**MEMORANDUM**

**I.      INTRODUCTION**

Plaintiff was billed and paid for a debt she never owed under Ohio law.  Plaintiff's assertion is that the law of Ohio clearly prohibits the collection of medical expenses

directly from her by defendants, Professional Radiology and M.D. Business Solutions, and any entity they employ as their agent. Defendants provide this Court with no law nor explanation why the collection method it utilized is not in direct contravention of Ohio law. Plaintiff will set forth why it is prohibited before addressing each of the causes of action sought to be dismissed.

Healthcare providers, like Professional Radiology, must decide whether they choose to be preferred providers with health insurers or not. If they contract with a health insurer, there is a tradeoff; more patients for lower reimbursement rates. The health insureds pay the health insurer a premium to gain access to preferred providers, such as Professional Radiology in this case. The State of Ohio has promulgated specific statutes to protect and guarantee the benefits of health provider-health insurance contracts for Ohio healthcare consumers. Every contract between a provider and a health insurer must, by law, contain the verbiage set forth in Ohio R.C. §1751.13(C)(2).

R.C. §1751.13(C)(2). The specific hold harmless provision specifying protection of enrollees set forth as follows:

> *"[Provider/Health Care Facility] agrees that in no event, including but not limited to nonpayment by the health insuring corporation, insolvency of the health insuring corporation, or breach of this agreement, shall [Provider/Health Care Facility] bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, person to whom health care services have been provided, or person acting on behalf of the covered enrollee, for health care services provided pursuant to this agreement. This does not prohibit [Provider/Health Care Facility] from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against the health insuring corporation or its successor."*

This statute prohibits seeking remuneration by any method from patients who are the intended beneficiaries of contracts between providers and health insurance corporations.  Since the statutory "hold harmless" language is mandatory, the Court may take judicial notice that the contract between United Healthcare and Professional Radiology includes the statutory recital.  Simply stated, R.C. §1751.13(C)(2) leaves no doubt that insured patients, who are the subject matter of the contract, are absolutely immune to collection by a provider subsequent to the consummation of the contract.  The statute is so all encompassing that this immunity survives nonpayment by the health insurer.  It bans billing the patient even when the health insurer meets an insolvent demise.   And, it applies to all of the health insurer's insureds.  It leaves no argument for discrimination on the basis of insureds who seek treatment for auto injuries; who have personal wealth, or who anticipate receiving personal wealth.  All are equally protected from any and all recourse by healthcare providers for treatment rendered, except for co-insurance, deductibles or co-payments.

R.C. §1751.60(A) and (C) reiterate the mandatory contract language in R.C. §1751.13(C)(2) and state that providers shall not, under any circumstances, seek compensation for covered services from enrollees or subscribers.  It matters not who the insured patient is, what brought them to the hospital, or what assets they have or may have in the future.   If an individual is an insured, the contracting provider is strictly prohibited under Ohio law from seeking compensation from that individual.  In the case before this Court, the Plaintiff was insured by United Healthcare.  Professional Radiology was a contracting preferred health provider and M.D. Business Solutions and the Controlled Credit Corporation acted as Professional Radiology's agent for collection of

medical bills. Defendants directly billed the Plaintiff in clear derogation of Professional Radiology's contract with United Healthcare and R.C. §1751.60(A) and (C).

The Ohio Supreme Court has spoken in regard to the scope of the statutory ban on direct billing of health insureds. While confirming the prohibition on billing health insured patients directly, the Court restricted the ban to its four corners by holding that seeking remuneration from third parties does not violate the Ohio statute. *King v. ProMedica Health Sys. Inc.,* 129 Ohio St. 3d 596, (2011). The Court's holding dictates that a healthcare provider can bill the health insurer and/or seek reimbursement from a third party or parties. What the healthcare provider cannot do is bill the health insured.

There is a single overarching issue in this case; Plaintiff was billed and paid for a debt she was never obligated to pay under Ohio law.

## II.     **PROCEDURAL POSTURE**

The within cause commenced with the filing of plaintiff, Barbara Jackson's (hereinafter "Jackson"), Class Action Complaint on September 11, 2015, against defendants, Professional Radiology Inc. (hereinafter "Professional Radiology"), M.D. Business Solutions, Inc. (hereinafter "M.D. Business Solution") and Controlled Credit Corporation (hereinafter "Controlled Credit"). Defendants, were granted extensions to file responsive pleadings. Defendants, Professional Radiology and M.D. Business Solutions, filed a Motion to Dismiss on November 10, 2015. Defendants' Motion is without merit and should be denied.

## III.     **STATEMENT OF FACTS**

On or about April 7, 2014, plaintiff, Jackson, sustained serious injuries in an auto accident. *See Complaint* at para. 9. As a result of the incident, plaintiff received medical

- 4 -

treatment and services from defendant, Professional Radiology.  *Id.* at para. 10.  During admission to the hospital, Jackson informed admitting staff that she had health insurance coverage.  *Id.* at para. 11.

Defendant, Professional Radiology, utilizes defendant, M.D. Business Solutions, for billing and debt collection services.  *Id.* at para. 14.  After the plaintiff received her medical treatment, defendant, M.D. Business Solutions, sent written correspondence to plaintiff, stating, among other things: that M.D. Business Solutions is responsible for the billing of Professional Radiology; the balance of plaintiff's account; requesting that plaintiff's attorney sign a letter of protection against any settlement or judgment that would "prevent your client's account from being sent to collections"; and, that "the purpose of this communication is to collect a debt."  *Id.* at para. 14.  M.D. Business Solutions sent additional dunning letters on July 3, 2014 and January 15, 2015.  *Id.* at para. 16.

Defendant, Professional Radiology, sent dunning letters on December 11, 2014 and March 26, 2015 stating, among other things: that plaintiff owed $1,066.00; that the correspondence was a "FINAL NOTICE;" stating that "if we do not hear from you, more serious collection activity will be initiated;" and, that "the purpose of this communication is to collect a debt."  *Id.* at para. 17, 18.  Defendant, Professional Radiology, then placed plaintiff, Jackson's, bill/invoice with defendant, Controlled Credit, for collections.  *Id.* at para. 19.  On May 5, 2015, defendant, Controlled Credit, sent plaintiff, Jackson, a dunning letter.  *Id.* at para. 20.

On or about May 26, 2015, Jackson, in response to the above threats, agreed to pay defendant, Controlled Credit, $852.00 in full and final settlement of her April 7, 2014 medical treatment.  *Id.* at para. 21.  On June 11, 2015, Jackson was again contacted by

Professional Radiology and/or M.D. Business Solutions and told she still owed $3.49, which plaintiff subsequently paid. *Id.* at para. 22.

Defendants chose not to submit plaintiff's medical expenses to the plaintiff's health insurer and instead billed her directly. *Id.* at para. 13. Ohio R.C. 1751.60 (A) states as follows:

> *(A) Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.*

Defendants, Professional Radiology and M.D. Business Solutions, have intentionally refused to submit plaintiff's medical expenses to plaintiff's health insurer in an effort to increase profits and force plaintiff to pay more for medical services than would be paid by the plaintiff's health insurer. *Id.* at para. 23. Defendants collected money <u>directly</u> from the plaintiff in direct violation of the statutorily mandated contract "hold harmless" provision and Ohio R.C. 1751.60 *et seq. Id.* at para. 24.

## IV. <u>ARGUMENT</u>

### A. STANDARD FOR MOTION TO DISMISS

Courts do not lightly reject fact-based claims at the pleading stage. They may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief. *Buchanan v. Northland,* 776 F.3d 393 (6th Cir. 2015). As outlined by this Court in *Bracken v. Dasco Home Medical Equipment*, Inc., 954 F.Supp.2d 686 (S.D. Ohio 2013), under Rule 12(b)(6), a Court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

"[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"*Tackett v. M& G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting *Twombly*, 550 U.S. at 556). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### B. PLAINTIFF'S CLASS ALLEGATIONS SATISFY FED. R. CIV. P. 23 AND S.D. OHIO CIV. R. 23.2

Plaintiff's Complaint clearly satisfies the pleading requirements of a Rule 23 action. Rule 23 of the Federal Rules of Civil Procedure governs class actions in Federal Court. To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types

of class actions provided for by Rule 23(b). *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943 (6th Cir. 2011). A district court's class-certification decision calls for an exercise of judgment; its use of the proper legal framework does not. *Id.* at 946. The class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963). Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. *Gen. Tel. Co. v. Falcon*, 102 S.Ct. 2364, (1982).

Under Rule 23(a), the proposed class must have numerosity, commonality, typicality and adequacy of representation. Further, under the S.D. Ohio Rule 23.2, the Complaint is required to assert sufficient allegations to identify the class and the claim as a class action, including, but not limited to:

(a) The approximate size and definition of the alleged class;
(b) The basis upon which the party or parties maintaining the class action or other parties claimed to be representing the class are alleged to be adequate representatives of the class;
(c) The alleged questions of law and fact claimed to be common to the class;
(d) The grounds upon which it is alleged that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(e) Allegations intended to support findings required by the respective subsections of Fed. R. Civ. P. 23(b)(1), (2), or (3).

Plaintiff, Jackson's, Complaint alleges facts which satisfy all applicable requirements, including the requirements of Rule 8, 23(a), 23(b) and S.D. Ohio Rule 23.2. Defendants' Motion to Dismiss challenges the plaintiff's complaint in regard to numerosity,

- 8 -

commonality and typicality.  In regard to numerosity, there is no strict numerical test for determining impracticability of joinder. *Senter v. General Motors Corp,* 532 F.2d 511 at 523 (6th Cir. 1976)  Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC,* 100 S.Ct. 1698, (1980). In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings, and an appellate court will generally defer to the District Court's determination that a class is sufficiently numerous to make joinder impracticable.  *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976)

Further, the Court may probe behind the pleadings before coming to rest on the certification question.  *Gen. Tel. Co. v. Falcon*, 102 S.Ct. 2364, (1982).  Plaintiff, Jackson, alleges that the putative class is "expected to be in the thousands."  *See Complaint.* para. 26.   Publicly available documents produced by Professional Radiology, indicate it employs 28 imaging specialist physicians. *See Exhibit 1.*  Further, Professional Radiology practices at large Ohio hospitals including, The Christ Hospital, Jewish Hospital, Fort Hamilton Hospital and The West Chester Hospital.  *Id.*  Professional Radiology has been in business since 1962.  *See Exhibit 2.*  The billing for Professional Radiology is handled by defendant, M.D. Business Solutions. *See Exhibit 3.*  M.D. Business Solutions has been in business since 1999.   *See Exhibit 4.*  This Court may make the reasonable and common sense inference that the putative class will number in the thousands.

In regard to commonality, plaintiff's complaint alleges facts which satisfy all applicable requirements, including the requirements of Rule 8, 23(a), 23(b) and S.D. Ohio Rule 23.2.  The commonality test is qualitative rather than quantitative, that is, there need

be only a single issue common to all members of the class.  Further, the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988).  Plaintiff's Complaint is clear and concise in presenting common questions of law and fact.  Defendants violated Ohio R.C. 1751.60 by billing Ohio patients directly for medical services.  *See Complaint*, Introduction and para. 13, 14, 17, 22, 23, 24 and 27.

In regard to typicality, plaintiff's complaint alleges facts which satisfy all applicable requirements, including the requirements of Rule 8, 23(a), 23(b) and S.D. Ohio Rule 23.2. Defendants fail to cite any case law in its limited argument that the plaintiff has failed to establish typicality.  Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. *In re American Medical Systems*, 75 F.3d 1069 (6th Cir. 1996).  Plaintiff, Jackson, easily satisfies the typicality requirement in that the defendants violated Ohio R.C. 1751.60 by billing her directly for medical services.  *See Complaint*, para. 12, 13, 14, 16, 17, 18, 19, 20, 21, 22 and 23.

Defendants also briefly challenge plaintiff's complaint on the grounds of failing to satisfy Rule 23(b).  Again, defendants fail to cite any case law.  Federal Rule of Civil Procedure 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The rule is designed to "'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Amchem Prod., Inc. v. Windsor*, 117 S.Ct. 2231, (1997).

Plaintiff's complaint alleges facts that satisfy the requirements of Rule 23(b)(1), 23(b)(2) and 23(b)(3).  Defendants violated Ohio R.C. 1751.60 by billing Ohio patients directly for medical services rather than seeking payment from the patient's health insurer. *See Complaint*, Introduction and para. 13, 14, 17, 22, 23, 24 and 27.  Rule 23(b)(1)(A) allows for class certification when "prosecuting separate actions by or against individual class members would create a risk of ... inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class...."A class action is appropriate under this subsection when "the party is obliged by law to treat the members of the class alike," for example when the class touches upon how a utility company interacts with its customers or how the government imposes a tax. *Amchem Products, Inc. v. Windsor*, 117 S.Ct. 2231 (1997). Defendants' have intentionally and systematically refused to submit claims to health insurers and instead billed patient's directly.  Plaintiff's complaint clearly satisfies Rule 23(b)(1).

- 11 -

Rule 23(b)(2)  allows for a class action to be maintained in cases where a party has refused to act on grounds that apply generally to the putative class.  Injunctive relief is appropriate in that defendants have intentionally and systematically billed plaintiff and all members of the putative class in violation of Ohio R.C. 1751.60.  Injunctive relief is necessary to ensure defendants cease their illegal collections and abide by Ohio law. Plaintiff's complaint clearly satisfies Rule 23(b)(2).

In regard to Rule 23(b)(3), in *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1196-97 (6th Cir.1988), the Court stated as follows:

> *The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense. However, the problem of individualization of issues is often cited as a justification for denying class action treatment in mass tort accidents. While some courts have adopted this justification in refusing to certify such accidents as class actions, numerous other courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or single course of conduct. In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issues of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.*

The common issues of law and fact relative to defendants violations of Ohio R.C. 1751.60 predominate over any questions affecting individual members.   Defendants' have intentionally and systematically billed patients directly.  *See Complaint,* Introduction and para. 23, 25.  A class action is clearly the superior method for fairly and efficiently adjudicating the within matter.  Plaintiff's complaint satisfies the requirements of Rule 23(b)(3).

- 12 -

### C. PLAINTIFF'S COMPLAINT STATES CLAIMS THAT RISE ABOVE THE SPECULATIVE LEVEL AND GIVE DEFENDANTS FAIR NOTICE

Defendants' Motion also requests the Court dismiss plaintiff's remaining allegations. Plaintiff's Complaint sets forth facts which would entitle plaintiffs to relief against said defendants. Courts do not lightly reject fact-based claims at the pleading stage. *Buchanan v. Northland,* 776 F.3d 393 (6th Cir. 2015). Dismissal is not appropriate in this case, in that, construing the Complaint in the light most favorable to the plaintiff, a claim for which relief can be granted has been made on each of plaintiff's claims.

### a. CONTRACT CLAIMS

### i. BREACH OF CONTRACT

Defendant requests that the Court dismiss plaintiff's breach of contract claims. Defendant's primary argument is that Plaintiff, Jackson, has failed to attach a copy of a written contract to the Complaint. Initially, it appears that the defendants have confused the pleading standards for this Court. While Ohio Civ. P. R. 10(d) requires the attachment of a contract to the pleadings, the Federal Civil Procedure Rules do not have a similar requirement.

Plaintiff, Jackson, sustained a fractured sternum in an automobile accident immediately prior to receiving medical services from defendant, Professional Radiology. *See Complaint* at para. 9. As one would expect, Jackson and Professional Radiology did not enter into a written contract prior to treatment being rendered. With respect to a bilateral contract, it is important to note that "to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski v. Fallet,* 2 Ohio St.3d 77, 79 (1982). Defendants obviously acknowledged the existence of a contract because they sent multiple written

communications to plaintiff stating the account for medical services provided on April 7, 2014 was in the amount of $1,066.00 and demanding payment for said services. *See Complaint.* para. 14, 17. "[A]n action on an account is founded upon contract, express or implied, and any competent evidence is necessarily admissible to prove the existence of the contract, its consideration, the furnishing of the services or goods, the consideration therefore, any payments made, and the balance due." *Summa Health Sys. v. Viningre*, 140 Ohio App.3d 780 (2000). Implied contracts may be inferred from the surrounding circumstances, including the parties' conduct and declarations that a contract exists as a matter of tacit understanding. *Stepp v. Freeman*, 119 Ohio App.3d 68, 74 (1997). Plaintiff's Complaint shows the existence of a contractual relationship, performance by the plaintiff, breach by the defendant and itemizes plaintiff's damages. *See Complaint* at para. 14, 17, 21, 34-39. Plaintiff's breach of contract claims should not be dismissed.

## ii. THIRD PARTY BENEFICIARY CLAIM

Defendant requests that the Court dismiss plaintiff's third party beneficiary claims for the same reasons offered in their breach of contract argument. Initially, plaintiff, Jackson, is not required under the Federal Rules of Civil Procedure to attach a copy of her health insurance contract. Plaintiff is a named insured of United Healthcare, a health insurance corporation and is entitled to receive benefits for health care services from United Healthcare. *See Complaint* at para. 4. Publicly available documents produced by defendant, Professional Radiology, indicate that plaintiff's health insurer, United Healthcare, is one Professional Radiology's "participating plans." *See Exhibit 1.* Additionally, the contract language rendering plaintiff an intended beneficiary is judicially noticeable since its inclusion is mandated by R.C.1751.13 (C) (2).

- 14 -

Plaintiff is an intended beneficiary of the contract between Professional Radiology and United Healthcare. If the promise intends that a third party should benefit from the contract, then that third party is an "intended beneficiary" who has enforceable rights under the contract. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, (Ohio 2011). R.C. 1751.60(A) mandates that health providers and healthcare facilities that contract with health insuring corporations to provide healthcare to the health insurer's enrollees or subscribers shall not, under any circumstances, seek compensation for covered services from the enrollees or subscribers, except for approved co-payments and all deductibles. Further, Jackson is also rendered a third party beneficiary by Ohio R.C. 1751.13(c)(2) which requires that all contracts between providers and health insuring corporations must contain the following "hold harmless" provision:

> *1751.13 (C)(2) The specific hold harmless provision specifying protection of enrollees set forth as follows:*
>
> *"[Provider/Health Care Facility] agrees that in no event, including but not limited to nonpayment by the health insuring corporation, insolvency of the health insuring corporation, or breach of this agreement, shall [Provider/Health Care Facility] bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, person to whom health care services have been provided, or person acting on behalf of the covered enrollee, for health care services provided pursuant to this agreement. This does not prohibit [Provider/Health Care Facility] from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against the health insuring corporation or its successor."*

Professional Radiology was free to decline entering into the contracts governed by R.C. 1751.60 (A) but it voluntarily did so, as it freely admits. *See Exhibit* 1. Plaintiff was a third party beneficiary of said contract. *See Complaint* at para. 41. Per R.C. 1751.13 (C)(2), "in no event" shall Professional Radiology, or its agents or assignees, seek

reimbursement from Plaintiff, Jackson. Plaintiff, Jackson, is an intended third-party beneficiary under the contract and Ohio law. Plaintiff's third-party beneficiary claims should not be dismissed.

### b. OHIO CONSUMER SALES PRACTICE ACT CLAIMS

Defendants request that the Court dismiss plaintiff, Jackson's, Ohio Consumer Sales Practice Act Claims (hereinafter "CSPA") under the faulty assertion that CSPA does not apply to transactions between medical providers and their patients and that plaintiff's Complaint does not comply with the CSPA's notice requirements. At the outset, we note that although the CSPA exempts transactions with individual physicians, it has been interpreted to apply to transactions between a service provider such as a hospital and a patient. *Summa Health Sys. v. Viningre*, 140 Ohio App.3d 780 (2000). "The court acknowledged that physicians were specifically excluded, but that because hospitals were not, hospitals had to abide by the CSPA." *Elder v. Fischer*, 129 Ohio App.3d 209, (Ohio App. 1 Dist. 1998), referencing and adopting the decision in *Thorton v. Meredia Suburban Hosp.* Cuyahoga App. No. 59405, unreported, 1991 WL 244206 (1991). Plaintiff, Jackson, is not bringing an action against the individual radiologist that interpreted her X-Rays. Rather, her action is brought against defendants, Radiology Group and M.D. Business Solutions for unfair, deceptive and unconscionable billing practices.

Defendants also cannot claim a lack of prior notice that their conduct violated the CSPA. Initially, their conduct is a *per se* violation of Ohio R.C. 1751.60 (A), in that as a health provider they billed their patients directly rather than their patients' health insurers. The Court in *Summa* held that billing transactions between medical providers and patients

were subject to the CSPA. *Summa Health Sys. v. Viningre*, 140 Ohio App.3d 780 (2000). Further the Ohio Supreme Court in a case regarding the interpretation and scope of Ohio R.C. 1751.60, found that directly billing the insured, as these defendants did, is in violation of Ohio R.C. 1751.60. In *King,* the Ohio Supreme Court stated: "By its express terms, R.C. 1751.60(A) governs providers or health-care facilities, health-insuring corporations, and a health-insuring corporation's insured. The statute is applicable only when there is a contract between a provider and a health-insuring corporation, and the provider seeks compensation for services rendered. The legislature expressed its intent that the provider must seek compensation solely from the health-insuring corporation and not from the insured. (Emphasis added). *King v. ProMedica Health Sys., Inc.*, 129 Ohio St.3d 596 (2011). Defendants' assertion that they were without prior notice lacks merit.

### c. FDCPA CLAIMS

Defendants also request that the Court dismiss plaintiff's Fair Debt Collection Practices Act (hereinafter "FDCPA") claims. Defendants argue: a) Professional Radiology and M.D. Business Solutions are not debt collectors; and, b) plaintiff's claim is time barred by the statute of limitations.

Defendants are clearly debt collectors under the FDCPA. The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. (Emphasis added.) 15 U.S.C. 1692(a)(6). The FDCPA is a broad statute aimed at eliminating the use of abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692(a); *Harvey v. Great Seneca Fin. Corp.*, 453

F.3d 324, 329 (6th Cir. 2006). Ohio courts have allowed FDCPA actions to go forward against physicians in near identical situations. In the case of *Mohan J. Durve, M.D., Inc. v. Oker*, 112 Ohio App.3d 432 (Ohio App. 8 Dist. 1996), a physician, Dr. Mohan Durve, attempted to collect a debt directly from a patient. The patient filed a counterclaim that included an FDCPA claim for attempting to collect monies that were not due and owing. The court in *Durve* held that "any attempt to collect monies not due and owing would be a violation of the FDCPA." *Id.*

Furthermore, both defendants represented themselves to plaintiff, Jackson, as debt collectors. M.D. Business Solutions sent correspondence to plaintiff stating, "the purpose of this communication is to collect a debt." Professional Radiology sent correspondence indicating the following: a) "the purpose of this correspondence to collect a debt;" b) "FINAL NOTICE;" and, "if we do not hear from you, more serious collection activity will be initiated." *See Complaint* at para. 14.

In regard to whether plaintiff's claims are time barred by an applicable statute of limitations, the statute provides that an action to enforce liability under the FDCPA may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The focus is on when the violation occurred. *Purnell v. Arrow Financial Services, LLC*, 07-1903, (6th Cir. 2008). "To the extent that these violations are alleged to have occurred outside the limitations period, they are barred by the statute of limitations. But, to the extent that plaintiff can prove that such violations occurred within the limitations period, they are not time-barred." *Id.* Defendant, M.D. Business Solutions, sent an improper dunning letter on January 15, 2015. *See Complaint* at para. 16. Defendant, Professional Radiology, sent an improper dunning letter on March 26, 2015.

*See Complaint* at para. 18. Plaintiff's money was improperly collected on May 26, 2015 and June 11, 2015. *See* Complaint at para. 21 and 22. Plaintiff's FDCPA claims are clearly within the applicable statute of limitations.

### d. FRAUD CLAIMS

Defendants' request that plaintiff's fraud claims be dismissed is completely without merit. It will be briefly addressed. In general, "[a] complaint is sufficient under Rule 9(b) if it alleges ' the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud,' and enables defendants to 'prepare an informed pleading responsive to the specific allegations of fraud.' " *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009).

Plaintiff's fraud claim has been pled simply, directly and with particularity. Defendants, in an effort to increase profits, failed and/or refused to seek payment for medical services from their patient's health insurers, but rather sought payment from the patients directly. *See Complaint* at Introduction and para. 13, 15, 23 and 24. These actions are in direct violation of RC 1751.60. *See Complaint* at para. 15. Plaintiff specifically identified the time, place and content of defendants' misrepresentation by quoting defendants' own dunning letters. *See Complaint* at para. 14, 16, 17, 20, 21 and 22. Plaintiff's Complaint's fraud allegations are pled with sufficient particularity and should not be dismissed.

### e. CONVERSION CLAIM

Defendants' request to have plaintiff's conversion claim dismissed is without merit. The Ohio Supreme Court has held "that conversion is the wrongful exercise of dominion

- 19 -

over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights."  *Joyce v. General Motors Corp.*, 551 N.E.2d 172 (Ohio 1990).  Defendants incorrectly state in their motion that they were entitled to payment for services from the plaintiff, Jackson.   Defendants' collection methodology constitutes seeking "compensation for covered services…from the enrollees or subscribers…," it is prohibited debt collection pursuant to R.C. 1751.60 (A), and it is equally prohibited in regard to all commonly affected putative class members in Ohio.  This is clearly contrary to Ohio R.C. 1751.60, which prohibits collection from health insureds; "and not, under any circumstances," from the patient directly.   Defendants sought and received compensation directly from the plaintiff.  *See Complaint* at para. 14, 17, 21 and 22.  Defendants have wrongfully exercised dominion over plaintiff's property in violation of her rights under Ohio law.

### f.  UNJUST ENRICHMENT CLAIM

Defendant's request for the Court to dismiss plaintiff's unjust enrichment claim is without merit.  "A claim for unjust enrichment arises out of a contract implied in law, or quasi-contract." *Hummel v. Hummel*, 133 Ohio St. 520, 525-528 (1938).  Under this type of contract, civil liability "arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain" without compensating the individual who conferred the benefits. *Id.* at 525.  To support a claim of unjust enrichment, a plaintiff must demonstrate that (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

- 20 -

Plaintiff conferred a benefit to defendant by the payment of monies.  *See Complaint* at para. 21 and 22.  Defendant demanded and had knowledge of said benefit.  *See Complaint* para. 14, 17, 21 and 22.  It is inequitable to permit the defendants to retain the benefit without compensating plaintiff.  Defendants, under Ohio R.C. 1751.60 are not allowed, "under any circumstances," to seek or receive compensation directly from the plaintiff, Jackson.  Defendants' collection scheme is prohibited by Ohio law and it would be unjust to permit defendants to retain their ill-gotten benefits without compensating the plaintiff.

### g.  PUNITIVE DAMAGES CLAIM

Plaintiff, Jackson's, Complaint, seeks punitive damages. "The general rule is said to be that exemplary damages may properly be awarded where the plaintiff has suffered actual damages as a result of fraud intentionally committed with the purpose of injuring him. * * *" *Logsdon v. Graham Ford Co.*, 54 Ohio St.2d 336 (Ohio 1978).  Further, plaintiff's inclusion of a specific Count for punitive damages places the defendants on notice that the plaintiff seeks to recover damages on all applicable allegations where the defendants' acts and/or omissions were willful, wanton, malicious, in bad faith, with actual malice and/or fraudulent.  Plaintiff's claims for punitive damages should not be dismissed.

### V.  <u>CONCLUSION</u>

For the foregoing reasons, dismissal is not appropriate in this case.  Construing the Complaint in the light most favorable to the plaintiff, a claim for which relief can be granted has been made.  Plaintiff has sufficiently pled allegations that are plausible, not speculative, nor legally conclusory.  Therefore, Defendants', Professional Radiology, Inc.

and M.D. Business Solutions, Inc., Motion to Dismiss is not well taken and should be denied.

Respectfully Submitted,

| | |
|---|---|
| /s/ C. David Ewing | / s / Gary F. Franke |
| C. David Ewing       (#002898) | Gary F. Franke                (0029793) |
| Ewing & Willis, PLLC | Michael D. O'Neill            (0075195) |
| 6009 Brownsboro Park Blvd., Ste. B | GARY F. FRANKE CO., L.P.A. |
| Louisville, KY 40207 | 120 East 4th Street, Suite 1040 |
| Tel:  (502) 585-5800 | Cincinnati, Ohio 45202 |
| Fax:  (502) 585-5858 | Tel:     (513) 564-9222 |
| | Fax: (513) 564-9990 |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed this 4th day of December, 2015, through the Court's CM/ECF filing system, which shall serve a copy of the document upon all registered counsel of record.

/s/ Gary F. Franke
Gary F. Franke              (0029793)
Attorney at Law